We'll hear argument first this morning in Case 21-1052, United States, ex rel. Polansky v. Executive Health Resources. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. The government lacks the statutory authority to dismiss a False Claims Act case after declining to proceed with the action, and that conclusion follows directly from the Act's plain text, structure, history, and purpose. Respondents' contrary view reads the Act's dismissal authority in isolation. It makes nonsense of the Act's deliberate structure. It renders key clauses superfluous, which respondents concede. And it requires limiting the relator's status and rights, where the Act unambiguously says the Court may not limit the relator's status and rights. When the FCA was enacted in 1863, the government could not intervene at all. It was not until 1943 that the government even had the option to take over the case at the outset. If Congress truly intended the government to have a global right to dismiss a declined case at any time, this is not remotely how the statute would read. Nor can respondents escape their weak textual position with a plea to constitutional avoidance, especially one requiring an unprecedented holding that an ancient practice predating the founding by centuries is somehow unconstitutional. Because the government lacked the power to dismiss, the judgment below should be reversed. I welcome the Court's questions. Mr. Geiser, would you spend just a few minutes on the constitutional problems that could be anticipated from taking your approach, the separation of powers problems that are suggested in the briefs on the other side? Sure, Your Honor. I don't think that there really is much of a constitutional problem precisely because of the strong historical pedigree of QUTAM actions. At the founding, QUTAM actions were commonplace. And this Court has said when you have an open and unchallenged practice that predates to the founding, where the very framers who crafted Article II didn't have any problem with enacting these statutes, that effectively fixes the constitutional meaning. Beyond that, could you point to a constitutional basis for it? The country was quite different then. The Attorney General until the mid-19th century was not really an institution. It was probably part-time. So it was different. And I understand that you would like to rely on that history. But I think we need a little bit more. You at least would need a constitutional hook, a textual hook of some sort. Sure. Well, I'll provide the textual hook just before I do. This Court in Stevens said that history was well-nigh conclusive for Article III purposes. And it would be very strange for it not to be well-nigh conclusive for Article II purposes. And what was the argument there? That was an assignment though, right? Well, the assignment is what gave the relator in Article III interest in the case. But the point was, was this consistent with Article III? And the Court said it was precisely because of the historical foundation. But this is the same foundation that existed when the False Claims Act was enacted in 1863. It's the same False Claims Act when this Court confronted it in the United States versus Hess, where the Court confronted a series of challenges that looked very much like the constitutional claims raised by the respondents. And not a single member of the Court even paused to suggest there was an Article II problem. But to look at the textual basis for this, the False Claims Act does not give the relator exclusive control to do whatever they'd like. No False Claims Act suit can proceed without the government's permission. The government has plenary authority at the outset to take over the case, where it can step in, proceed with the action, move to dismiss the action. It can amend the complaint, it can add claims, it can subtract claims. If a False Claims Act case goes forward, it's precisely because the executive has effectively said that it can. But things can change, as the other side points out. The discovery can reveal new facts. There could be a new administration that comes in. There could be burdens on the agency that were not apparent at the outset. So to bind the government to its initial decision strikes me as just increasing the Article II concerns that Justice Thomas asked about with the statute. First of all, do you agree that things can change after the first 60 days? In theory, they can at first. It's not just the first 60 days. The government routinely gets extensions going months or years into the process. So I think it's mostly hypothetical. It's pretty rare for the government, if they've done their job at the outset, Congress channeled the government's decision to that critical initial phase. It expected Congress, or the government, to go forward and investigate the case, vet the legal theories, vet the facts, and decide whether this is an appropriate case to go forward, and whether it's an appropriate case for the government to litigate or for the relator to litigate. I was just going to say, however many times it comes up in general, this was a specific case in which the government makes a strong argument that the facts did change, and changed dramatically. The United States jumped in when the extent of the burden in terms of the documents they would have to review became clear, and when also the, at least to some, questionable conduct of your client with respect to discovery came to light. Well, Your Honor, I want to answer the Article 2 question, but just to get into the facts very briefly. The burden that the government quantified when they were asked, what is this litigating burden, it was 32 hours to redact documents and about 300 hours to deal with discovery. This is a potential multi-billion dollar recovery for the federal FISC, so I think 332 hours with two government attorneys spending about a month of time is really not much of a burden. The government was also concerned about privilege, wasn't it? It was, Your Honor, but it was mostly concerned about the chilling effect that the court's order, saying that the government's documents were not privileged, would have on future agency discussions. Now, the only way to eliminate that chilling effect is to challenge the order. Dismissing the case, if the order is what's causing the government's concern, is just leaving that order on the books, as opposed to taking an appeal to wipe the order out. But to get to the Article 2... Didn't they also think that there was not substance to the claim? That there were real problems with the claim? Your Honor, what they were concerned about, in theory, was that there were certain elements of evidence that the relator was not able to obtain. Now, the district court said that that evidence was not necessary for the district court to prove, for the relator to prove the case, and the experts quantified the evidence based on the, the recovery based on the evidence that existed, to be over a billion dollars. So, Mr. Garza, I'm sure there are two sides to this question. But why isn't, why shouldn't it be, you know, it's the government's action. Why shouldn't the government have the ability to say, things have changed? We think the merits are less strong. We think the discovery burdens are greater than we initially did. And, and so we want to, essentially, reverse our prior decision. Well, a few things, Your Honor. First, the question isn't really a matter of policy. Could Congress say that the government can dispense at any point? Of course they have. Now, that's not what the False Claims Act looked like in 1863. It's not what it looked like in 1943, where the government couldn't even intervene in the case, after initially declining to proceed. But I think that actually cuts against you, because you suggest that the government, or that Congress channeled the government's authority to the initial stage. And I'm wondering how you can say that, given the history. It seems as though the history of the statute is pretty clear, that Congress only amended it to allow for later intervention, because it was concerned that the government didn't have an opportunity to intervene after the initial period. So this is sort of in line with my colleagues suggesting that they wanted the government to be able to come back in and take over the case if things had changed, or the circumstances were such. And it was also clear from the history that Congress was concerned about the relator having no role in the suit, if the government came back later. So how is that consistent with your theory that the government has sort of an all-or-nothing choice to be made at the beginning of this, and it can't intervene later and then act to dismiss the suit or do whatever else? Sure. Well, just to be clear, it is not an all-or-nothing choice anymore. And our theory is perfectly consistent with what Congress did in 1986. Before 1986, the government couldn't intervene in the case after the fact. After 1986, the government can intervene. Now, it can't intervene and proceed with the action. Congress said only intervene in C-3, and it said they can do it with good cause. And they said, importantly, they can do it without affecting, without limiting, the status and rights of the relator. I'm sorry, so what's the purpose of the intervention then, if they can't then take over the action and proceed? Oh, the purpose is very important. It gives the government a chance to litigate as a full party. Now, what they can't do is invoke the specific limitations, and that's how C-1 describes it in paragraph 2. Paragraph 2 sets out special limitations on the relator's rights, where the government initially proceeds with the action. And this is very clear from the structure of the Act. Congress put the government to an initial choice under subsection B, and it said you can either proceed with the action or you can decline, in which case the relator has the right to conduct the action. And then it marched through the different rights to the parties to the action in subsection C. But, Mr. Geiser, specifically, Justice Jackson's point is the same question that I have. I guess I'm not sure what the government then is doing there. If you let the government in and you're saying, you responded to Justice Jackson by saying, well, the government can then be a full litigant. Well, litigants can move to dismiss. So what can the government do? Well, the government can litigate as a full party. Now, they can move to dismiss under the federal rules of civil procedure. But what a litigant normally can't do in a two-party case is you can dismiss your own claims. You can't dismiss someone else's claims. They're kind of the same claim here. Well, sure they are, and that's why Congress is very clear that if the government wants to be able to dismiss the case at the outset, it has to intervene and proceed with it. The text of the dismissal provision is the key, right, C-2A? And that provision is straightforward. It's unqualified. The government may dismiss the action, notwithstanding the objections of the person initiating the action, if the person's been notified and there's a hearing. Just full stop. Full stop, Your Honor, but you can't read that provision in isolation. Just on its own, and that's the provision that refers to dismissal, it doesn't qualify it in any way other than the notice and hearing. It doesn't say you have to meet the standards of the federal rules. And it reflects the backdrop, again, as Justice Thomas alluded to, of the Article II concern that would exist if the government's power to control prosecution of a case or pursuit of a civil action were somehow removed from the government's power. So why shouldn't we read the statute, given the Article II concern, read that provision for what it says? Your Honor, because I think that doesn't work when you look at the surrounding language and when you look what the violence that would do to other parts of the statute. It's effectively the argument that paragraph two applies whether or not the government proceeds with the action. That's what Congress wrote in C-4. Yet the dismissal rights are in C-2, not in C-4. But why doesn't the intervention kick you back to where the government proceeds with the action under 1 and then 2A? I think for two reasons, Your Honor, two key reasons. The first is that the intervention cannot limit the status and rights of the relator. Paragraph two is framed in the statute as limitations. So that is, in fact, you're taking the relator who has the right to conduct the action. Before the intervention, they are not subject to the paragraph two limitation. But why isn't that part of the statute better read to reflect the point that I made earlier, which is that Congress was concerned that if the government was conducting this action, the relator wouldn't have any role? So it's not so much saying that the relator is not subject to the government's determination when it is proceeding with the action, but that the relator still gets noticed, still gets to make his argument before the court as to why the case should not be dismissed. But it doesn't work in the way that you've suggested. Well, Your Honor, again, it does not say without limiting some of the relator's rights. It says the relator has the right to conduct the action. This is a provision that applies when the government elected not to proceed with the action. The relator's in control. And it says the government, upon a showing of good cause, can intervene without limiting the relator's status and rights. What do you do with two? Well, with four. Sorry, with four. So here's a situation in which the government has determined, or it says whether or not the government proceeds with the action. The government can make a showing about the person initiating the action's interference with the government's investigation. So we have a world in which Congress has envisioned that the government is still going to have some control and limit the other person's right to conduct discovery or whatever else, even though they haven't intervened in that situation. So how is that consistent with your theory that once the person is taking over the action, the government can't limit their litigation tactics or whatever? Your Honor, I think C-4 is a very strong point in our favor. It shows that where Congress wanted to limit the relator's rights, whether or not the government proceeds with the action, it said so. And the dismissal rights are not found in C-4. In fact, the government concedes, and the private respondent concedes, that that reading renders surplusage that introductory phrase of C-4. It also renders superfluous the final sentence of C-1, which says that the relator can still participate where the government does proceed with the case, subject to the limitations of Paragraph 2. Congress had no reason to put in that phrase that Paragraph 2 applies in every situation. Now, on the C-4, the whether or not, as I read it, means if it hasn't been dismissed, there are two tracks the case could be going down. The government could be in control or the relator could be in control. And what C-4 is making clear, as I read it, whether or not the government proceeds with the action, whether the government's in control or the relator's in control, the government can still come in either way and say the discovery is interfering with the government investigation or prosecution. To me, that doesn't detract at all from the straightforward language of C-2A. What am I missing there? Well, Your Honor, I think what you're missing is look at the clear progression that Congress set out in Subsection C. It's a division of rights based on the government's initial choice under Subsection B. And, again, it's using the phrase proceed with the action. The proceed with the action phrase is found in Subsection B. It is not found anywhere in Subsection C-3 where the government has the right to intervene. So Congress clearly said that if the government wants to proceed with the action, they have certain rights. The relator can still participate subject to the rights in Paragraph 2. Congress then set forth what those rights are. Then it proceeded to other situations, situations where the government elects not to proceed and situations whether or not the government proceeds. Just to slow down a minute for me, on C-1, you said the last clause of C-1 would be redundant? Yes. I guess you could call it redundant. You could also call it just making crystal clear that even if the government takes over the action, the relator is still a party. But just to be clear, that subject to clause, make crystal clear, if it's dismissed, you're gone. Like you can't continue it if it's dismissed. That's what I read the subject to, to kind of underscore so there would be no confusion about that. Well, Your Honor, but again, but if Paragraph T sets forth a set of rights that applies in every single case, whether the government proceeds, whether they later intervene, whether they elect not to intervene at all at any point in the case, there's no reason to put that language in. So, Mr. Geiser, your arguments are better for the government's first argument. But if you go to the government's backup argument and say that they can only dismiss once they've intervened, even if that intervention follows an initial declining of the opportunity, then most of your arguments fall away. On that theory, you know, it makes perfect sense to, well, the intervention kicks you back to 1, which gets you into 2A. Your Honor, I do agree that a lot of our arguments are designed to show the government at least has to intervene first and satisfy that good cause showing. But we still have, I think, at least two or three important arguments, even to show that that sort of reset the case argument doesn't work. The first, again, is it says you can intervene. It does not say intervene and proceed with the action. Congress used that different terminology in B2. And when Congress put the government to the choice of taking over the case, not just intervening and participating, but taking it over, they always used the phrase proceed with the action. It's a very distinctive phrase, and it's repeated throughout the False Claims Act. The second point, again, is that this is still limiting the relator's status and rights. It says you can intervene, government, but you cannot limit the relator's status and rights. Well, it says the court shouldn't limit the status and rights. That's a different thing. Well, it does. But I think, though, that in paragraph 2, none of those rights are activated unless the court is doing it. So the court then is limiting the relator's status and rights. And just right on the face of the statute, paragraph 2, again, if you look to C1, Congress described the rights in C2, those restrictions, as limitations on the relator's participation. So that is quite clearly a limit on the relator's status and rights. This is also inconsistent with the broader structure of the Act. Look back to the initial choice that the government makes. That's under subsection B. That has to happen at the outset of the case. It says the government has to decide whether to proceed with the action or not within the first 60-day period extended by months and often years. There's nothing in subsection C, and it would be a very odd way for Congress to have written this, to say subsection C, when the government intervenes, even though we're not saying intervene and proceed with the action, and even though we're not saying just intervene, and without limiting the relator's status and rights. We have that qualifier in there. That Congress thought that the government at that point could reset the party's rights, effectively restart the litigation. If you look to 3731C, the government has the right, if they do intervene and proceed with the action, to file a new complaint. They can basically start the case over years down the road, which isn't good for the relator, and it's not good for the private defender either. Mr. Geiser, perhaps you've said everything that you have to say on this point, but just to be clear, if the government intervenes belatedly, what do you think it can do that would not constitute a limitation of the debtor's status and rights? I think the government can do anything that any ordinary party can do under any of the federal rules of civil procedure. It can file a motion to dismiss under 12B. It can file a summary judgment motion on either side. It can serve discovery. It can participate in the hearings. It can propose jury instructions. All it can't do are invoke the paragraph 2 rights, which are special rights that are clearly activated only where the government proceeds with the action. These are rights that are found only in the False Claims Act, and looking at the clear structure of the Act, these are rights that only apply where the government proceeds at the outset. Mr. Geiser, I just want to give you the opportunity to discuss the standard. Suppose we disagree with you and we think the government can intervene at this stage and seek to dismiss the case. There's a hearing that's called for under C2A. What's that supposed to look like in your view? I think the fact that there is a hearing requirement shows that the government does have to prove something. As the Seventh Circuit said, courts don't have hearings. It's to serve coffee and donuts while the parties gather together. I've actually been to one of those. I know it can happen, but I'd agree with you it's exceedingly rare. So what is the standard? Do we borrow from 41? Your kind of net cost-benefit analysis argument, I don't know where that comes from. Help me out. Sure. I think that you're dealing with the relator's assigned property interest in the case. I think at a minimum the constitutional rationality standard has to apply. The government has to come forward with a rational, non-arbitrary basis for dismissing the case. And again, we're not saying that this is a constitutional error in this case. We're not saying that the government violated our constitutional rights. We're saying the government misread the statutory standard. I think it's clearly not Rule 41, as I think all parties to the case agree. Rule 41 is distinctly an opposite in this context. It involves a voluntary dismissal of someone's own action. In this case you have two parties, and one is opposing the dismissal. And Rule 41, again, is usually activated without any sort of hearing. Here you have to have a hearing. So the question is, what is the court supposed to do at that hearing? And again, I think it's to put the government to the proof of showing that they've asserted a rational basis for dismissing the case. And that it is actually supported by the facts and record of the case. You're requiring the government to prove to a court that it has some basis for dismissing the government's own case. I mean, the Article 2 starting point of all this seems in great tension with your answer of how the government should be held to the proof. Government controls the litigation. That's part of Article 2. Well, no, Your Honor, not in an absolute way. And also, too, remember, this is not only the government. Maybe not in an absolute way, maybe in an absolute way. But even if not in an absolute way, doesn't it have to inform how we think about the whole structure of the proceeding that Justice Gorsuch describes? Well, Your Honor, again, our contention is the government doesn't even have the right to dismiss after the fact. But if we get to the hearing that Justice Gorsuch raised rightly and what has to happen at that hearing, I think when the court's interfering with the government's ability, the executive's ability to control the suit, that's an Article 2 concern, it seems to me. Well, Your Honor, for instance, to be very clear, this is not only the government's suit. Congress assigned a property interest in the action to the relator. That's why the relator has the relator's own Article 3 standing. That's what this court held in Stevens. So the government is, in fact, extinguishing not just their own claim. They're extinguishing the property interest that's been assigned to the relator. And, Mr. Kaiser, I understand that point. I mean, Blackstone talks about TTAM actions as property interests and maybe some bundle of sticks have been given to you and some retained. Whatever. Okay. You argue for a rational basis review, near as I can tell, in saying it's a governmental action and even executive governmental action still has to be non-arbitrary. I mean, I got it. Okay. But the way you argue for rational basis is a pretty aggressive version of it in saying that, you know, we got this billion-dollar case, and so your inconveniences aren't good enough. Normally, when we invoke rational basis review, it's pretty cursory, pretty quick, and the government always wins. So tell me what I'm missing there. Well, that is typically true, Your Honor. I think this is a rare case where it could surmount that standard. The rational basis standard goes partly to Justice Kavanaugh's question, too. It's not imposing a very extreme burden on the government, but I do think it is arbitrary and, in fact, irrational to say, if I just stick this out for one more month and do a couple of redactions and answer a few more discovery requests, I'm going to recover over a billion dollars for the federal fisc. But you know what? I'd rather not be bothering. Well, litigation is always fraught with risk. Every client I've had as a plaintiff always thought they were going to get a billion dollars at the end of the day, for sure. But that's not the way the system works, right? So can't a government have a cost-benefit analysis that differs from yours? Absolutely, Your Honor, but they have to run that cost-benefit analysis. And this isn't just the client saying, you know, wild pie in the sky theories. These are experts that looked at this. They quantified the evidence. They explained the theory. Everybody's got an expert. Okay. More like intermediate scrutiny, really. Well, Your Honor, I don't think so in this case. We're simply saying you just have to substantiate what the government is saying. So if I can just give one example that I think proves what we're saying. The government said one reason for dismissing the case is that the relator promised that he would narrow his claims, and then he failed to do it. The relator cleared the precise amendment with the government before filing it with the court. The government signed off on the amended complaint. And then the government, after the fact, says you didn't do what we asked you to do when, in fact, they did exactly what the government approved. So is that arbitrary? That sounds arbitrary to me. And under, I think, a strict... Oh, I'm sorry. Finish. No, I'm saying under a strict even just rationality standard. You said before when I asked you what could the government do when it was in the suit, and you said it could make a motion under Rule 41 like any other party, and this is if it chooses to proceed with the action. The standard there would be then the same? Well, under Rule 41 it wouldn't apply here because, again, you have two plaintiffs. No, no, I mean like if it chooses to proceed with the action during the initial sealing period. Oh, I'm sorry. If it chooses to proceed with the action, then it can move to dismiss, and I presume it would invoke the C2A authority as opposed to Rule 41. I think the C2A authority here would probably displace Rule 41. So there's no... I thought you had said something before about Rule 41. I must have misheard. No, I'm sorry. I think what you might be referring to, Justice Barrett, is the fact that you said if the government intervenes later, then it can act under the federal rules of civil procedure as any normal party would. So why wouldn't Rule 41 then be available to the government at that point? May I answer? Sure. I don't think it would be available precisely because of the nature of the act and its displacing of Rule 41. Now, what I was trying to say earlier, and I might have misspoke. If I did, I apologize, is that the government can invoke other rules of federal procedure. They can invoke Rule 12. They can invoke Rule 56. If they think the defendant is, in fact, right and that the case is no merit, they can say so, and there's nothing wrong with that. That's not interfering with the relator's status and rights. What is interfering with the relator's status and rights is putting specific limitations from Paragraph 2 on what the relator can do when the relator has been vested with the right to conduct the action. Thank you, counsel. Justice Thomas? Justice Alito? The standard that you're recommending for the hearing is the one that's in use in the Ninth Circuit. Is that correct? The Ninth and Tenth Circuits, yes. The Ninth and Tenth. Are there examples of cases from those circuits where the court has found that the standard was not met? There is a district court case in the Ninth Circuit, I believe, that has. And, again, this is exceedingly rare. This is not putting the burden on the government in a very onerous way. Well, this is not new, so I won't belabor it. It does seem like what you're talking about is, in reality, either nothing or a quagmire. Suppose the government says, we don't want this case to go forward because we actually think the claim is not meritorious and the defendant doesn't deserve to be sued. What's the court supposed to do there? Have a mini-trial on the strength of the case? Well, ideally, Justice Alito, what the government would have done is at the initial period, where Congress channeled the government's real decision-making in this and given them every tool to investigate the claim, they would conclude at that point that the case is not meritorious. They would intervene and proceed with the action, and then they could invoke the C2A authority to dismiss the case. Thank you. Mr. Geiser, assuming, as did Justice Gorsuch, that I believe the government can intervene and can dismiss, to dismiss, because I think that's a form of proceeding with the action. You can take discovery, you can make a motion for summary judgment, you can do all sorts of things, including moving to dismiss. So assume I do that. Doesn't the good cause standard for intervention provide you with the standard, meaning if you have to prove good cause to intervene, you have to prove you have a reason, and the reason just can't be arbitrary and capricious. Isn't the question that simple, and isn't that the question that would happen? It's all one motion, as it was in this case. It was one hearing. The government came in, said we want to intervene because we think we have to dismiss now. The court held a hearing, listened to its reasons, and said they're rational. They're not arbitrary and capricious. So isn't that the standard? Are they arbitrary and capricious? I don't mean to quibble with the premise, but just to be complete about it, I think Your Honor said that part of proceeding with the action is moving to dismiss. I accept that you don't think it is, but assume I do. I do think the good cause standard provides an extra layer of protection for the relator, and that the government should, as a part of the good cause showing, explain why it didn't intervene earlier. I don't disagree with you, but that goes to the issue of whether the choice they're making now is arbitrary and capricious. I think it does, Your Honor. I think that that is another layer of protection for the relator. How do you see arbitrary and capricious as different from the rational relationship test of the Ninth and Tenth Circuits, or between that and Rule 41, where it says a court has to consider whether a dismissal is proper? Well, I think that it is similar to the Ninth and Tenth Circuit standards. I think it's very different than the Rule 41 standard, where the court is considering whether... Similar, but how different? Well, I think very different. Rule 41 is looking to prejudice to the defendant. Putting that aside, because it's a placement motion, and I agree with you, it's what's proper for the dismissal of the action, but assume that I think proper has a meaning. What meaning would you give it? If we are stuck with the Rule 41 standard, I think proper still would have to be something that is not arbitrary, because something that's arbitrary is improper, and not irrational, because something that's irrational is also not proper. Irrational is different than capricious. Not arbitrary or capricious is different than rational. I think that could be true, Your Honor, and we'd be fine with either standard. I think in this case, we could prevail under either standard if it's applied in a meaningful way. Okay. Thank you. Justice Kagan? Justice Gorsuch? Just on the good cause question, that's the standard for intervention, correct? That's correct. In the statute, and there is a separate question here, whether the government has to intervene in order to dismiss if it's after the 60 days, correct? That's correct. Okay. On the question of the hearing that Justice Gorsuch raised, the statute itself, the text of the statute, imposes no standard whatsoever, correct? I'm sorry, the statute? On the hearing on a dismissal, the text of the statute imposes no standard whatsoever for the government to be able to dismiss, correct? That is correct. Thank you. Justice Barrett? Justice Jackson? So I'm still a little stuck on your initial argument, which seems to be that the subsequent intervention does not permit the government to interfere with the relator's status and rights. So the government, per the plain text of the statute, can come in, but you say at that point the relator is still controlling the action, and therefore the government can't move to dismiss or do anything other that's sort of inconsistent with the relator's control of the action. Do I have right your argument, basically? Yes, but it is, just to be very clear, I'm not just making this up. In C-3, it says without limiting the relator's status and rights. Yes, no, I understand the textual basis. What I'm concerned about is that the most definitive statement that we have related to Congress's actual intent, which I know that we sometimes don't look at or don't care about, but in this case, the legislative history, the Senate report on pages 26 and 27 say exactly something that is totally inconsistent with what you've just said. It talks about, as Justice Kavanaugh brought up, a situation in which the government has failed to intervene at the beginning, and they were concerned, they say, because, you know, the government would be barred from reentering the litigation under a circumstance in which, quote, new evidence discovered after the first 60 days of the litigation could escalate the magnitude or complexity of the fraud, causing the government to reevaluate its initial assessment or making it difficult for the key Tam relator to litigate alone. And this is the key part. It says, in those situations where new and significant evidence is found and the government can show good cause for intervening, paragraph 2 provides that the court may allow the government to take over the suit. So it doesn't say that the government can just intervene and act as another party. It is contemplating clearly in the legislative history of the Senate that the idea is that the intervention is to allow the government to take over the suit because we have good cause. There are reasons why the relator, exercising its rights, can't really do it. And so I don't understand why, under those circumstances, you would say the government can't act as the, quote, unquote, owner of the suit once it reintervenes. Your Honor, and the sentence that you read, I'm glad you brought it up, we didn't stress it precisely because the court typically doesn't look to legislative history, but it's actually a powerful point in our favor. Look at the Senate version of the Act. The Senate version of the Act is not the enacted version. It was changed in two very critical ways. The proposed language in the Senate said intervene and proceed with the action. The final version struck and proceed with the action. Just intervene. The second change, which is also critical, is the Senate version did not have the qualifier without limiting the status and rights of the relator. That was inserted in the official version. So do we have legislative history that explains the changes that you're talking about? Do we know why they struck those things? Unfortunately, we do not know why, but what I do know is that when the Senate is saying, we think the government should be able to intervene and take over the case, and they have very distinct language, and the enacted version says, I don't think so. You can't intervene and proceed with the action. So what do we do about Section 5 that says the government may, I'm talking about the statute, may elect to pursue its claim through any alternate remedy available, including the administrative? In the legislative history that I'm reading, it goes on to talk about how when the government takes over the suit, it can also decide to not continue to pursue it as a litigated matter, but can take it and put it into the administrative course. Is it your point that the government can only do that in the beginning now, based on the way you read the statute? Oh, no, not at all. Because, again, look at the introductory language to C-5. It says notwithstanding the action under subsection B. So basically notwithstanding the False Claims Act case, and this is a good reason that also this doesn't present any real Article 2 concern. It's telling the executive, if you would rather pursue this False Claims Act case, at the start, later in the case, it doesn't matter. Through another proceeding, through an administrative proceeding, through a different judicial proceeding, you can do that. And nothing about the filing of the action under subsection B, which is the private action by the relator, can interfere with the government's ability to pursue other forms of relief. One last question. Why does the government have a right to continue to get information in the case if the property right shifts completely to the relator once the government declines to intervene initially? Is it just so that they could possibly intervene and come back and do something that is not controlling the case? Well, I think it is, Your Honor. First of all, the property isn't assigned entirely to the relator. You know, the government obviously gets the bulk of any recovery. But it is to give the government the opportunity to say, you know what, we think the relator needs help, or we think that this proceeding actually would benefit from our stepping in and supporting the defendant. What's the point of good cause? Why does the government have to show good cause to intervene unless there's some implication that the government might be able to do something that the relator doesn't want him to do? Well, I think that there's good cause. It shows the respect for the relator and the relator's right to conduct the action. It shows that Congress really did expect the government to make that initial up-front choice or just say, just come in at will. Whenever you feel like it, you can come back in. But again, when they can come back in, they have to respect the relator's status and rights. And you can't limit those rights. And Paragraph 2 is framed in the statute as limitations on the relator's rights. So it really is... Thank you, Counsel. Mr. Liu? Thank you, Mr. Chief Justice, and may it please the Court. This case presents two issues, and the plain text of the False Claims Act resolves them both. The first issue is whether the government may dismiss a key time action after electing not to intervene during the seal period. The answer is yes. The text of Section 3730C2A says that the government may dismiss if the relator is given notice and an opportunity to be heard. Congress could have easily said that the government may dismiss only, quote, if the government elects to intervene. Those are the words that Congress used elsewhere in the statute when it wanted to make a right contingent on the government's election to intervene. Yet Congress didn't include those words or anything like them in Section 3730C2A. Thus, regardless of the option that the United States selects, it retains the right to dismiss the action. The second issue in this case concerns the extent to which a court may review the government's decision to dismiss. Unlike other provisions of the statute, C2A does not specify a substantive standard for a court to apply. The statute thus commits to the government's discretion the decision whether to dismiss. I welcome the Court's questions. Mr. Liu, the petitioner argues that they have a property interest in this suit, and I think that's underscored by Stevens, which says that they have a partial stake in this. If you can unilaterally dismiss, how can you square that with the assignment that they have? Well, I think we do recognize that they are assigned a property interest, and that is precisely why we think there is a constitutional baseline that applies. It's precisely because they have a property interest under the due process clause of the Fifth Amendment that we think even in the absence of any standard specified in the statute, the government still has to comply with a constitutional baseline in deciding whether to dismiss. That's not a very rigorous baseline. I think the Ninth Circuit got the baseline wrong in Sequoyah-Orange when the Ninth Circuit looked to the standard that applies to evaluating legislative action. The relevant standard here is a standard that applies to evaluating executive action, and this Court in cases like County of Sacramento v. Lewis has made clear that that is a tough standard to meet. It requires egregious, outrageous executive action to satisfy. Does this baseline exist at the initiation of the action, or does it only exist later when you have to intervene in order to dismiss, as you seek to do now? I think it exists throughout the action. We think we don't need to intervene at all as a prerequisite to dismissal, so if we were to exercise our dismissal right even without intervening, we think we would have to at least, we could not violate the Constitution in doing so. But you wouldn't be violating a due process right if you come in before there has been an actual assignment of the right. You can dismiss for any reason because there hasn't been a property interest created. You have 60 days to decide whether to intervene with whatever extensions are granted. But until that moment that the property right is created, you don't have to give a reason because there's no property right. But assume that I believe that once the property right is created, and our cases have recognized that, there has to be something more than constitutional protection, doesn't it? I don't think so, Your Honor. A prosecutor can come in and take away somebody's property rights for an arbitrary and capricious reason, for no reason whatsoever? We think the constitutional protection means that the government couldn't dismiss a case if doing so was arbitrary in the constitutional sense. Well, that's my problem, which is, when is it ever proper to take away a property right in the constitutional sense, whether it's for a legislature or the executive, for an arbitrary and capricious reason? You have to give some meaning to having a hearing. I think that's our point, is if the relator could show that our exercise of the dismissal right was arbitrary in the constitutional sense. That's the question that I'm asking. The only thing in the constitutional sense would be an equal protection violation, a dismissal based on sex, etc. But that's not related to the property right in any way. Well, I think it is because there wouldn't even be that protection without some property interest that triggers the application of the due process clause. Now, Congress could have layered on top of the constitutional baseline an even more rigorous standard of review. Well, they did, good cause. Good cause to intervene suggests that there has to be a reason. Well, our primary argument is that the government need not intervene as a prerequisite. But why is that, Mr. Liu? That seems odd. I mean, the statute is very clear that the government has a period of time at the beginning to make a determination about whether or not it's going to take over the action. If the government declines and the property interest is created, the statute suggests that the government can come back into the action. And if you're like me and believe, perhaps, that that means the government can take it over, they can definitely intervene, but they have to show good cause. And it would seem to me that good cause does the work of ensuring that the property interest that has been created is taken into account and understood  So I'm curious as to the government's repeated representations that they can do all sorts of things related to this suit without even intervening. Well, I think it goes to the purpose of intervention under the structure of the statute. The purpose of intervention under the statute is for the government to become a plaintiff in the case. And the point of becoming a plaintiff in the case is so that the government can assume the rights and burdens of being a full party in the case, the rights being the ability to file motions, to examine witnesses, to direct the presentation of evidence, the burdens being the burdens under the Federal Rules of Civil Procedure as they pertain to discovery. But not the right to settle the claim? I mean, you say repeatedly that the government doesn't have to intervene and they can still settle this claim. Well, my point is none of those rights or burdens matters if the whole point of the government's motion is to end the case. The only reason intervention matters is if we want to proceed with the case, and it matters what our rights are, what our burdens are going forward. But if the whole point of our motion is to end the case, then there simply is no reason to put us through the hurdle of intervening beforehand. Your case would be easier for you, maybe for us, if your client had a more robust view of Article 2. I was surprised it's cited only once in your brief on page 40. We're talking about the government's ability to control a suit with billions of dollars of money defrauded against federal law, according to the allegations, and yet you're not arguing much about the President's authority to enforce that statute at all. Well, let me be clear about two things. Number one, of course we think that in a case of a suit brought in the name of the United States that is to redress injuries done to the United States, the United States' own views of what's in its interest should be paramount. But secondly, we do not think in this case that there is a constitutional problem to avoid, and the reason goes to the reasoning of this Court's decision in Stevens where the Court made clear that the relator here is not acting as an agent of the United States. Rather, the relator, by virtue of the assignment theory, remains a private person. And in our view, the Article 2 concerns aren't triggered by a private person who's simply exercising private power. They would be triggered if the relator were conceived of as an agent or representative of the United States. Well, that depends upon your prevailing in this case. And if you don't, then your authority to control the action would be significantly circumscribed. Well, I think the bright line I'm drawing is between private persons who are seeking to enforce federal law on the one hand, so not just the relator in this case, but also the Title VII plaintiff or the Sherman Act plaintiff. That's on the one hand. And on the other side of the very bright line, an agent or representative of the United States who is actually exercising governmental executive power. Now, we think this relator falls on this side of the line. But if this relator fell on the other side of the line, we would not think the controls in this statute would be sufficient. The idea that it would be sufficient for Article 2 purposes, that we could simply file papers in court and try to get the court to control an agent of the United States, really would stretch Article 2 very far. The only reason why this scheme is constitutional is for the reason the court gave in Stevens, which is that the relator is conceived of as not exercising governmental power. If I understand it, and I just want to make sure I'm following the bouncing ball here, the Article 2 problem is solved by the fact that exercising its Article 1 authority, Congress has authorized property to be conveyed to a private person, which that's right there in the text of Article 1. And that's kind of a blackstone conceived of key actions is a property interest that's been conveyed. Okay, fine. But the property, now you want to come into the case, okay? Question whether you have to come into the case. If it's someone else's property, you know, you might think that before you extinguish it, you might have to come in and be a party to the case. So that's kind of where I'm stuck on that. And then when we get to the question of the standard, if there is a property interest that someone else has, there's a due process interest there at a minimum. Forget about the takings clause for now. And what's wrong with the rationality standard, a true rationality standard? We can quibble about whether the Ninth Circuit got it right. But what's wrong with that? Any executive action, forget about property interest, would be subject to that. And why is that much different than Rule 41, which says proper cause when an answer has been filed? All right, a lot there. Have at it. Well, to your first point, we don't think there are Article 2 concerns here. But it is still central to the way this statute works, that this is a suit brought in the United States, in the United States' name, to redress wrongs done to the United States. So this at bottom is still an assignment of the government's own damages claim. Sure. And so the government's own view of whether the litigation proceeding or being dismissed is in the United States' interest is really something in the United States' bailiwick, and our view of that should be controlling. To your point about the constitutional baseline, I think this is a situation where Congress could have imposed a stricter standard if it had wanted to. What kind of hearing? And normally they're not tea parties, right? Normally something happens at that hearing. So what should happen in the hearing? Is something wrong with the rational basis test? Is it different than Rule 41 after an answer? Proper cause? Is the standard there? Those things are usually very easily met, and I'm just not sure I understand the objection to them. Sure. Well, the rationality standard that the Ninth Circuit has adopted isn't your typical constitutional rational basis. I'll spot you that. Yeah. Okay. I'll spot you that. It's also not the standard. But put that aside. Would a proper, in the government's view, rational basis standard be objectionable? And would it be different than Rule 41? Last time I'll ask the question. I promise. It would not be objectionable if it reflected this Court's decisions in cases like County of Sacramento v. Lewis. That's the applicable constitutional test. We don't think the Court should invent some sort of new one-ticket-only sort of test for this case. Is it different from Rule 41? Yes. Rule 41 governs the relationship between the plaintiff and the defendant. And so what Rule 41 says is that when a plaintiff voluntarily dismisses a case, the Court can step in and protect the defendant's interest by dismissing... Well, it says proper cause. It says a plaintiff can dismiss a case for proper cause. You're now a plaintiff. Rule 41, you want to voluntarily dismiss, answer's been filed, summary judgment, whatever, proper cause. There's no more definition of the standard than that. Right, but the standard that I think the rulemakers contemplated was one where a court would be in a position of evaluating whether something the government did, dismissal, how that affected the defendant. And that kind of inquiry, prejudice of the defendant, is pretty common in the law. What's not common is what Petitioner is asking the Court to do here, which is to evaluate as between two litigants on the same side of the V, the United States and the relator, which one has the better view of the United States' interest. That's not something Rule 41 has ever contemplated. But that's because a ketam action is unusual. And Justice Gorsuch is right, right, if the proper cause standard, and I agree with you, that courts typically apply that to account for prejudice to the defendant if the plaintiff dismisses after the defendant has filed an answer or dispositive motion. Why couldn't the proper cause standard in this unique context take care of any prejudice to the relator? I think it's because it would run straight into the teeth of Congress' decision in C-2A to leave out a substantive standard. And this wasn't an accident that Congress made. If you look up and down the FCA, there are numerous provisions where Congress specified a particular showing that the government would need to make or a particular finding that the court would need to make, and they left out any such standard in C-2A. Justice Thomas, anything further? Justice Alito? I still don't have a very concrete understanding of what you think is supposed to happen at this hearing if there has to be a hearing. Is it enough if the government just says, we think the claim isn't meritorious or we think the discovery going forward is going to be too burdensome? Does the court just say, okay, that reason is not arbitrary and capricious and therefore dismiss? Does it inquire into those things? If those are the reasons we gave, they would not be anywhere close to being arbitrary in the constitutional sense, and it sort of shocks the conscience away. But we do think the hearing serves two important purposes. Does the government have to do more than simply say those things? No. Does it have to make, okay. No, and if Congress had wanted the government to say more than those things, it would have used language like it did elsewhere in the statute, which is upon a showing by the government, the court may dismiss, or upon a particular finding, the court in its discretion may dismiss. But instead, the language of C-2A is written in terms of the government. It says the government may dismiss, and then the Congress specified two conditions, neither of which has to do with what would be insufficient in your view. So the government says we move to dismiss because we feel like it, or we move to dismiss because we consult with an astrologist, or there is political pressure to dismiss this case. What would be insufficient? Well, I think consulting an astrologer would seem arbitrary in the constitutional sense, but we're not asking the court to disturb its existing precedence on what is constitutional or not vis-a-vis executive action. We're simply saying take those as given, and that's the constitutional baseline. If in a future case the court wants to adjust the constitutional baseline, that's fine. But all we're saying is that the way to think about this is that the statute itself does not supply a standard, and so the only applicable standard here has to come from the Constitution. What happens when the government belatedly intervenes and moves to dismiss, or belatedly moves to dismiss, and doesn't really have a good reason for having waited, but by that time the relator has spent a ton of money litigating the case? Is it just too bad for the relator? It is too bad. The relator brings the case knowing that a condition of his assignment, in effect, is that the government may exercise its dismissal right. No circuit has adopted Petitioner's view that the government loses forever the right to dismiss if it doesn't intervene at the outset. And so every relator brings these suits knowing that that's a possibility. On top of that, the government provides, as required under C-2A, notice that we're going to exercise this right before we exercise it. And just look at the facts of this case. We gave notice that we were going to exercise that right the first time. The relator came in and persuaded us not to exercise it. And so, in fact, that's evidence not only that the notice is a key component and that the relator had notice of what we were doing, but also that the hearing serves a purpose because it led us to decide not to dismiss at one point in the case. Justice Sotomayor? To answer Justice Alito's entire question, the astrologer might not be good enough. I don't feel like it. Is that good enough? No, I think that would be arbitrary in the Constitution. So let's talk about political pressure. There's no reason related to the case. It's simply that the senator of this defendant's home state doesn't want this defendant to be sued. Is that good enough? I think it would truly depend on the circumstances of the case. And the reason why is because the whole point that Heckler v. Cheney says that these types of decisions are presumptively immune from judicial review. They are if you're talking about something that's your property right exclusively. But this is a very different situation where the relator has a property interest. Well, I think the cost-benefit analysis, though, is still just as judicially unmanageable regardless of the sort of analytic source of it. In other words, when the government makes these sorts of decisions, what's going into the decision-making is a consideration of the government's policies across the board, whether certain resources would be better allocated here or there, concerns from disclosing privileged information. Those are related to the case. The question was the senator of this defendant's state says, don't do it. He gives me money. This company feeds me money. I think it's hard to say categorically whether that would be impermissible simply because the way our system works is through politics. And politics figure into the sorts of policies and priorities that administrations have. So it's a fake property interest the relator has. Oh, no. It's protected just like any other property interest under the Constitution. And if Congress had wanted to provide additional protections, it could have done so, but it didn't. Okay. Thank you. Justice Kagan? When and how would it make a difference to require the government to intervene before moving to dismiss? Yeah, I think the practical problem lies in subjecting the government's dismissal decision to second-guessing by the relator. And that, in turn, puts the court in the awfully strange position that I mentioned earlier of having to decide as between the United States itself and the relator who actually has the better view of the United States' interest in that case. I think that runs right into the problem that Heckler v. Cheney identified, and I have to presume that's why Congress left out any substantive standard in C-2A itself. To then read into the statute kind of through the back door of C-3's intervention provision a substantive standard to review that decision I think gets both Congress' intent and common sense wrong. Justice Gorsuch? Just to follow up on Justice Alito's question, would it be okay to come in and say we don't think it's the best use of agency resources to proceed? Yes, that would be absolutely okay. And it's not a priority of the agency to proceed with this kind of case? Correct. So all the kind of Heckler v. Cheney reasons. And could a district court order discovery into whether those were really the government's reasons? No, not in a typical case. I think if a relator came in and made a credible showing that there was a constitutional violation, such as an equal protection example. What about privilege? Proceeding with this will raise too many privilege concerns when moving. Yes, I think that is a legitimate reason and not arbitrary in the constitutional sense reason for the government to seek to dismiss. Just a question on the term property interest here. It's an odd sort of property interest, right, when it can be completely extinguished by the government, the executive branch at any time? Well, I think it is a property interest. It's an odd thing. It's an odd thing, but it is, I think, the structure Congress contemplated and the one that this court accepted in Stevens. And I think if we accept that theory, then a lot of parts of the statute make sense from an Article III and an Article II perspective. Last question. This might be what Justice Kagan was asking, but it might be something different. If you have to intervene before you move to dismiss, and so this is repetitive, I apologize. The D.C. Circuit said that would be largely academic, that requirement, if you had to intervene before moving to dismiss. Do you agree with that? I mean, in other words, it doesn't matter one way or the other. Yeah, I think it depends entirely on what standard for good cause the court adopts. It's largely academic if the standard for good cause means that any time the government seeks to dismiss, that's automatically good cause. Also, on the good cause, the things I identified earlier about reasons to dismiss, you would also say, if we required you to intervene first, would also satisfy good cause, prioritization, resources, privilege. Right. I mean, we would go even further and say that the intent to dismiss is itself good cause to at least have the notice and the opportunity. Then it really is academic, which is fine, but that's good to get clarity on that. Okay. Thank you. Thanks. Justice Barrett? Justice Jackson? Yes, so just following up on Justice Kagan and Kavanaugh's point about intervention. So I thought you said to Justice Kagan that intervention would be problematic because it's subjecting the government's dismissal decision to second-guessing. But it's not the intervention that is subjecting the motion to dismiss. It's the fact that you have to have a hearing for a motion to dismiss, right? I mean, regardless, even without intervention, do you concede that the statute says that the government's filing of a motion to dismiss at least entitles the relator to an opportunity for a hearing? Correct. So it's the hearing that creates the opportunity for a second-guessing of the government's determination about dismissal. But we think Congress in C-2A purposely left out any substantive standard for a court to apply in evaluating the government's dismissal decision. And to read good cause as supplying that standard we don't think makes sense under the statute. What if we read good cause as not so much supplying a standard, but I notice in the statute it says, upon a showing of good cause, such hearing may be held in camera. So what if what's happening there is the government, when it intervenes, has the opportunity to present arguments to the court about the nature of other investigations or whatever it is that it does in camera, and that kind of cuts against the relator's open hearing scenario? Well, I don't think our concerns are fully addressed by moving the reason, the evaluation, in camera. I think our problem with subjecting the government's decision to a substantive standard is, one, that's not what Congress intended, but two, it does create this practical problem where the court is engaging in the sort of inquiry we think Headquarters v. Cheney recognized courts are ill-equipped to conduct. So this might be repetitive. What inquiry is the court supposed to be engaged in in the hearing that you concede the motion to dismiss goes along with? We think at the hearing the court can consider relator's allegations that we have violated the constitutional baseline that we think applies in this case. The hearing also serves a second purpose, which is that it allows the relator to convince the government not to exercise the right to dismiss. Now, that is far from an empty formality, as this case illustrates, because when we initially wanted to dismiss the case, we heard from the relator and then changed our minds, giving the relator a chance to put the case back on the right track. It was only after the case fell off that track that we then ultimately exercised our dismissal right. Thank you.  Mr. Moger? Mr. Chief Justice, and may it please the court, no court has interpreted the False Claims Act to prohibit the government from dismissing a QI-TAM suit if the government initially declined to intervene. That interpretation would interfere with the government's dismissal authority because the government cannot always determine during the seal period whether a suit should be dismissed. Whether the claims lack merit or whether they could interfere with other enforcement actions may not be known before the litigation proceeds. If the False Claims Act prevents the government from ending litigation that no longer serves the interests of the United States, then the statute is unconstitutional. The enforcement of federal law cannot be left solely to private relators seeking financial gain. I welcome the court's questions. Counsel, is it consistent with Congress's view of these sorts of actions going back to 1863 to continue to leave the entire proceeding in the hands of the government, which it would be under your theory? In other words, the government didn't have a statutory right to intervene until 1940-something. And yet now, you would join the government and say basically that they can bring the suit to a halt at any time, and given the looseness of the standard being proposed, for pretty much any reason. Yeah, I mean, we think that the government's right to step in and dismiss a case, a case that is brought on behalf of the government to pursuing claims that are owned by the government, we think that the government's authority to step in and stop that case derives from the Constitution itself and Article II. And so the early statutes that didn't expressly provide for a right of dismissal, they also didn't foreclose the government from dismissing. And we think that the early statutes should be viewed as silent on the issue of what authority does the executive branch have to stop a key tam suit that the executive determines is not in the United States. So you have a stronger view of the president's powers than the government? Yeah, I think that is the case. I will point out in the lower courts, the government did make a more robust constitutional avoidance of power. And I want to be clear exactly the breadth of our argument here. We have not argued that every key tam statute ever enacted is unconstitutional. We haven't even challenged the constitutionality of the False Claims Act as interpreted by the Third Circuit in this case. The only constitutional argument that we have made is that if petitioner is correct, that if Congress in this statute has prohibited the government from dismissing or settling some certain set of cases or in some circumstances, that would push the statute past the constitutional breaking point and go too far in interfering with the president's Article II powers. We note there have been a number of Court of Appeals decisions that have upheld the constitutionality of the key tam suits, but they have all first interpreted the dismissal power to apply whether or not the government proceeds with the action, whether or not the government initially declines or comes into the case later, and they have noted how that right is important in their view to allow the executive to maintain the necessary control over the suit. It is a very big incursion into the president's authority to say that somebody else gets to decide whether an enforcement action is initiated in the first instance. What the courts have said is, well, that incursion is not so substantial if we interpret the statute to say that the government can come in at any time and just dismiss the suit. But if we're not in that circumstance anymore, if we're in the circumstance where the relator both can initiate the suit, and if we reach a point where the government can no longer come in and end the litigation, whether through settlement or dismissal, then the relator would have free reign to decide what arguments to advance on behalf of the United States, how to interpret the False Claims Act, and we would say that would go too far. We've talked about how the right to dismiss at the beginning of the case doesn't take into account changed circumstances, but I think it also doesn't take into account the Article II responsibilities of the president. It's not just that the president needs to appoint officials to execute the law. The court has made clear as recently as cases like Arthrex that the president has an ongoing obligation to actively supervise the exercise of executive power. If this were an ordinary property interest, so a plaintiff is bringing a private claim to protect its own property interest, the government could not swoop into the case and say, dismiss the claim, and the court's inquiry would not be limited to determining whether the government's intervention in the non-technical sense of the term shocked the conscience, right? I think that's right, but the way that we read Stevens, the way that we read Blackstone, the provisions of Blackstone cited in Stevens, and also the way we read cases like the confiscation cases, is that a property interest in a QTAM suit vests upon the entry of final judgment. The actual assignment of a chose of action, I think, is probably more akin to a contractual right or even perhaps a trust. So we think that the property right, this is how we read Stevens, the property right doesn't vest until there's a judgment, and that's why we don't think that the review necessarily needs to be treated as the deprival of a property right. We think if you look at it more of a contractual assignment of a chose of action, the terms of the assignment have to be set by the contract, which is the statute in this circumstance. And one of the rights in the statute, as we read it and as the government reads it, is that the government has the authority to dismiss over the relator's objection. And, you know, you'll ask a lot about the interpretation of how to get… Well, that sounds like it's purely statutory. So if you have a contract assigning a right, you look to the terms of the contract, so here we have the statute. You look to the terms of the statute. It's just not clear to me how Article II then gets back into the case. There's either an Article II problem or there isn't an Article II problem with this whole procedure. Well, regardless of whether you view it more as a contractual assignment or an assignment of a property right, you still have the situation where a private relator is litigating on behalf of the United States to recover funds allegedly defrauded from the United States. And our position would be that is still the exercise of executive power, and that puts you in the position of determining whether the president and the attorney general retain sufficient control over the QETAM suit so as to not violate the constitutional separation of powers. When the courts of appeals have looked at it, they've analyzed it in a Morrison v. Olson framework to say, does the powers given to the relator, is it so sufficient that it deprives the attorney general of the ability to sufficiently control the litigation to ensure that the laws are faithfully executed? And all of those analyses depend on the government's veto power, essentially, to say this suit is no longer serving the interests of the United States. We need to bring it to an end. And how far does that go? Does the constitutional argument that you're making suggest that the government needs to be able to bring it to an end even without intervening? Or are you perfectly fine with a solution that says, well, first the government intervenes and then moves to dismiss? We're perfectly fine with that approach. What the Third Circuit held in this case is that the government needs to first intervene. It found that on the facts of this case, there's clearly good cause to intervene. The petitioners have not challenged that part of the holding. And so on the judgment before you is a case in which the court of appeals found not only that intervention was required, but it was satisfied and good cause was there. And it does deal with a lot of the textual issues regarding the structure of the provisions and the surpluses to say the government needs to intervene. But then once it intervenes under C-3, it goes back into the world of C-1 and C-2 where it has the power to dismiss. We note the court of appeals, both the Third Circuit in this case and the Seventh Circuit, have required intervention. And they've said it's usually going to be a low bar for the government because good cause is a flexible standard. And we can take into account Article II separation of powers concerns when we are applying good cause. And so we think that should go a long ways to addressing the government's concern of what would happen if good cause is too heightened of a standard and make it too difficult for the government to intervene. If I could, I could respond to the government's position that, as I understand it, the constitutional position is that the relator is not exercising government power because it's a private individual, but we don't think that should be the constitutional analysis. It is maybe a private person, but in some ways that may become more problematic that it is a private person who hasn't taken an oath to the Constitution, who's not bound by DOJ guidelines, who is able to litigate claims on behalf of the United States. And so we think it's even more important that the Attorney General has substantial oversight over a private person litigating on behalf of the United States when we clearly know that the interest that the private relator is most concerned about is the financial stake that he may have in the case. Do you agree with the government's understanding of what should and should not occur at the hearing, if there's going to be a hearing? Yes, we take a similar position. I mean, some of the courts of appeals have said that it does provide a useful function of requiring the government to listen to the relator and hear the evidence and the arguments against dismissal. It also, you know, I think this could be analogous to a situation of the way the court addressed the court's decision in Armstrong, where they recognized that usually the government's decision not to prosecute in a criminal case is not subject to judicial review. And what if the government doesn't really have any good reason for not intervening earlier? It just says, well, we're embarrassed, Your Honor, but this kind of fell behind a filing cabinet in DOJ and we only found it recently, and the relator says, well, that's fine, but we've spent $500,000 litigating this case up to this point. What does the court do then? Can the court say that the defendant has to pay or the government has to pay? I assume we can't say the defendant has to. Well, how about the government? We certainly would not say that. I mean, one thing I would say, especially in a case where the government has expressed its opinion that it is concerned about the relator's ability to prove its case, then I think the concerns on the relator's side of how much money they have spent and how long they've litigated the case to reach a point where they haven't even been able to convince the government that they have a chance of success. The real risk of prejudice and of concern is on the defendant's side, who has also spent large amounts of money defending itself against claims over a period of years, and now it's the government whose claims the case is brought on behalf. They have expressed their view that the relator is unlikely to be able to prove that. So the government shouldn't flip the whole bill, right? It should pay the relator and the defendant. The statute makes clear that the government doesn't have to pay the costs of the litigation, and it's the deal that the relator knows when he files the suit, is that this has been the uniform interpretation of the statute by every court of appeals that the government can come in at any stage in the litigation and dismiss over the relator's objection. So there's not an instance of unfair surprise, or that there was a new interpretation offered. There hasn't been a court that has adopted the sort of restriction that the relators want. Thank you, counsel. Anything further? Justice Sotomayor and Justice Gorsuch. Anything further? Okay. Thank you. Rebuttal, Mr. Geiser. Thank you, Mr. Chief Justice. Just a few quick points. First, if the executive must be able to dismiss at any time and for any reason, then the founding area QI-TAM statutes are unconstitutional. The 1863 version of this Act is unconstitutional, and the 1943 version of this Act is also unconstitutional. The rule has never been, in the QI-TAM setting, that the executive has to control the private relator's action in enforcing the property interest in that claim. The second point, the government says that its stated basis is not subject to second-guessing if it can dismiss. Now, of course, that question is, why is there a hearing? The normal reason for having a hearing is to second-guess what the government is saying. And, in fact, it is equivalent to saying that because I feel like it, if the government can come up with any reason at all and not have to justify the reason, even if it's clearly arbitrary and clearly incorrect. The government has also said that second-guessing would not be subject to judicially manageable standards. Now, of course, Congress thought it's perfectly capable to have a court subject a settlement to very similar standards, and I don't know why if the government can evaluate a settlement for its reasonableness and its fairness, it can't evaluate a basis for dismiss for irrationality or arbitrariness. The government says that the lack of any standard... Oh, I'm sorry. The government says that there isn't a standard in the statute. Now, under our reading, that makes more sense. If Congress expected the government to take over the case and proceed with the action at the outset, and that's when the dismissal authority would kick in, it would make more sense to see the lack of a standard. That would be more like a Rule 41 dismissal. Now, of course, once the relator has invested all that money and you're years down the road, and the government has no good reason, really, for changing its mind, it's very strange not to see a more concrete standard in a statute that says there has to be notice and a hearing. The final point I'll make is that if there is a hearing, and if we're wrong on our main theory, and I hope the Court reconsiders, then I think the constitutional standard is at least baked into that statute. It's implicit in saying that the government has to come up with some basis for dismiss that is non-arbitrary and that is rational. Congress could not extinguish a property interest for rational, arbitrary reasons. And if that's true, Congress also can't authorize the government to extinguish a property interest for rational or arbitrary reasons. Thank you, Counsel. The case is submitted.